497 A.2d 1386

**Glenn M. BOBAK, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued March 12, 1985.

Decided Aug. 2, 1985.

Reargument Denied Oct. 9, 1985.

Jerry B. Landis, Pittsburgh, for appellant.

Michael L. Magulick, Pittsburgh, for appellee.

Before DEL SOLE, HESTER and FEENEY *, JJ.

* Judge John M. Feeney, of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

DEL SOLE, Judge:

The Appellant, Glenn Bobak, who carried a No-Fault insurance policy with the Appellee, was injured in a motor vehicle accident. Mr. Bobak missed more than seven months work due to the injuries he suffered, and was paid No-Fault benefits other than the claim he asserts here. Because of the time he missed at work he was deprived of credits toward unemployment compensation benefits. Thus, when he was subsequently laid off due to lack of work, his unemployment compensation benefits were substantially lower than what they would have been if he had not been injured in the accident.[1] When the Appellee, Allstate Insurance Company, denied Mr. Bobak's claim for the difference between what he actually received in unemployment compensation benefits and what he would have received if he had not been injured, Mr. Bobak brought an action against Allstate to recover this amount. The trial court found for Allstate and Mr. Bobak appealed.

The sole issue before us is whether, when an insured has missed time from his employment by reason of personal injuries sustained in a motor vehicle accident, and by reason of such loss of time has been deprived of credits toward unemployment compensation benefits, is the loss of such benefits a work loss as defined under the provisions of the Pennsylvania No-Fault Motor Vehicle Act. This appears to be the first time this issue has come before this Court. We affirm the finding of the trial court and find that the Act does not provide that the Appellant's claim is a compensible work loss.

Appellant argues that since the goal of the statute is to provide "adequate basic loss benefits" and "maximum feasi-

---

1. Appellant recieved $80 a week for sixteen weeks in unemployment compensation. Had he not been disabled due to the accident, he would have worked and earned increased credits toward unemployment compensation benefits, and his compensation would have been $188 for sixteen weeks, $167 for an additional thirty weeks and nine weeks extended benefits at $167 a week. There is no dispute between the parties that his total compensation had he not been injured would have been $9,521 as compared with what he actually received, $1,280, for a net loss of $8,241.

ble restoration", the announced legislative purpose of the statute would not be achieved if he does not recover his losses in unemployment compensation benefits. Appellant also reminds us that the courts of the Commonwealth have found in favor of the insured in close or doubtful cases. He argues that the loss in unemployment benefits is an accrued loss and not a future loss and thus is recoverable under the No-Fault Act. Appellant sees his loss as part of a loss of gross income and argues that as such is compensible.

Appellee argues that since the statute does not specifically provide the benefits with Appellant seeks, the legislature must have intended the omission. Appellee further argues that the recovery sought by the Appellant is for a loss which was suffered after his period of disability and is therefore a future, not an accrued economic detriment.

Although Appellant argues correctly that the courts of the Commonwealth have interpreted the No-Fault Act liberally in favor of the insured, we find that the statute does not permit the recovery which the Appellant now seeks. The statute defines "loss" as "the accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle, consisting of, *and limited to,* allowable expense, work loss, replacement service loss, and survivors loss." 40 P.S. § 1009.103. (Emphasis added). The only category of loss listed in this section which Appellant's claim might fall is "work loss". The definition section of the Act says that "work loss" means loss of gross income and sends us to 40 P.S. § 1009.205 to determine how to calculate work loss. Section 1009.205(a) is the work loss section applicable to the Appellant, who was regularly employed at the time of the accident. It provides:

(a) **Regularly employed.**—The work loss of a victim whose prior to the injury was realized in regular increments shall be calculated by:

1. determining his probable weekly income by dividing his probable annual income by fifty-two; and

2. multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period.

40 P.S. § 1009.205(a).

■ The statute sets forth the calculation of work loss on the basis of gross income during the accrual period, which means the period of disability. The Appellant received income in the form of unemployment compensation after the accrual period, that is, after he had recovered and returned to work for a time. We cannot stretch the meaning of the statute to include the earning of credits toward a possible receipt of benefits after the accrual period. Such credits are not gross income.

■ The fact is that the No-Fault Act does not necessarily make a person financially whole regardless of his losses. Work loss benefits are limited to $15,000 a year, for example, and the survivors loss is limited to $5,000. While losses not covered by No-Fault benefits may be sought by an accident victim who files an action against a third party tortfeasor, the No-Fault statute itself does not necessarily put an accident victim in the same economic position he was in before the accident. We therefore affirm the order of the trial court and find that the Appellant is not entitled to recover for unemployment compensation benefits for which he became eligible after his automobile accident.

Order affirmed.